UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| NANCY MILLER, </br></br> Plaintiff, </br></br> v. </br></br> COMMISSIONER OF SOCIAL SECURITY, </br></br> Defendant. | Case No. 1:22-cv-00045 </br></br> Magistrate Judge Alistair E. Newbern |

# MEMORANDUM ORDER

Plaintiff Nancy Miller filed this action under 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (SSA) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) Miller moved for judgment on the administrative record (Doc. No. 14), the Commissioner responded in opposition (Doc. No. 17), and Miller filed a reply (Doc. No. 19).

The parties have consented to the Magistrate Judge's jurisdiction under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. No. 16.) Having considered the parties' arguments and the administrative record (Doc. No. 9) as a whole, the Court will grant Miller's motion, vacate the Commissioner's decision, and remand this action to the SSA for further administrative proceedings.

I.      **Background**

    A.      **Miller's DIB and SSI Applications**

Miller applied for DIB and SSI on May 4, 2020, alleging that she has been disabled and unable to work since January 23, 2020, because of degenerative disc disease in her lower back and osteoarthritis in her upper and lower back. (AR 67–68, 77–78.[1]) The Commissioner denied Miller's applications initially and on reconsideration. (AR 87–88, 123–124, 127–132, 133, 134–135.) At Miller's request, an administrative law judge (ALJ) held a telephonic hearing regarding her applications on September 27, 2021. (AR 32–66, 142–43.) Miller appeared with an attorney representative and testified. (AR 36–50, 52–62, 191.) The ALJ also heard testimony from a vocational expert. (AR 50–52, 62–63.)

    B.      **The ALJ's Findings**

On October 13, 2021, the ALJ issued a written decision finding that Miller was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DIB and SSI. (AR 16–26.) The ALJ made the following enumerated findings:

> 1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2025.
>
> 2.      The claimant has not engaged in substantial gainful activity since January 23, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> \*     \*     \*
>
> 3.      The claimant has the following severe impairment: spondylosis without myelopathy or radiculopathy, lumbar region (20 CFR 404.1520(c) and 416.920(c)).
>
> \*     \*     \*
>
> 4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[1] The transcript of the administrative record (Doc. No. 9) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk sit 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. Occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Avoid concentrated exposure to unprotected heights and moving machinery.

\* \* \*

6. The claimant is capable of performing past relevant work as a Cleaner, Fast food worker, and Assistant retail manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 18–26.) The Social Security Appeals Council denied Miller's request for review on September 8, 2022, making the ALJ's decision the final decision of the Commissioner. (AR 1–7.)

C. **Appeal Under 42 U.S.C. §§ 405(g) and 1383(c)(3)**

Miller filed this action for review on October 28, 2022 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Miller argues that the Court should remand her applications to the SSA for reconsideration because the ALJ violated SSA regulations by improperly evaluating the persuasiveness of Dr. Woodrow Wilson's medical opinion regarding Miller's functional limitations. (Doc. No. 14-1.) The Commissioner responds that the ALJ followed SSA regulations and that the ALJ's decision is supported by substantial record evidence. (Doc. No. 17.) Miller's reply reiterates her arguments that the ALJ's analysis of Dr. Wilson's opinion is inadequate and warrants reversal. (Doc. No. 19.)

3

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

## B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four.

*Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Analysis

Miller's sole argument in support of judgment on the administrative record and remand is that the ALJ failed to properly assess Dr. Wilson's medical opinion regarding Miller's functional limitations in formulating Miller's RFC. (Doc. No. 14-1.)

For DIB and SSI claims filed on or after March 27, 2017, the applicable SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[2] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* §§ 404.1520c(b), 416.920c(b).

---

[2]   This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[3] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considers the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

Dr. Wilson examined Miller on March 3, 2021, in connection with Miller's DIB and SSI applications. (AR 472–76.) Dr. Wilson noted the following physical examination findings:

**PHYSICAL EXAMINATION:**

Vital Signs: Height is 62 inches without shoes, weight of 144 lbs. Blood pressure is 120/70, pulse of 82, and respirations are 12. Visual acuity without correction: 20/30 right eye, 20/25 left eye; and 20/20 with both eyes.

---

[3] This differs from the regulations governing DIB and SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

General: She is a well-developed, well-nourished, alert, white female, does seem very uncomfortable, complaining of back pain during the exam. She was standing up, leaning over the bed when I walked into her room. She did not want to straighten her back up completely. She seems of average intelligence. Functioning slowly. She needed to use her arms to push herself up out of the chair. She had difficulty getting back up from lying down. She is cooperative with the examination and seems fairly reliable. Pleasant lady.

Head, Ears, Eyes, Nose, and Throat: Pupils are equal, round, and reactive to light. Conjunctivae are clear. Extraocular motions are intact. Ear canals are clear. She is wearing a face mask covering her nose and mouth for COVID precautions. Speech and hearing seemed to be okay.

Neck: No adenopathy or masses. No bruits or JVD. She has full flexion of the neck, but extension is 20 degrees. Lateral deviation on the right side is 40 degrees and to the left side 30 degrees. Normal rotation in each direction. She does complain of pain in her neck on motion.

Respiratory System: Thorax has equal bilateral excursion. Breath sounds are clear bilaterally.

Cardiovascular System Heart has regular sinus rhythm with normal S1 and S2. No murmurs or gallops. She has good peripheral pulses. No bruits heard.

Abdomen: Soft, nontender, and nondistended. No guarding or rebound. No organomegaly. Bowel sounds are positive. No bruits heard.

Musculoskeletal System: Her gait is short-stepped and she is limping complaining of pain in her back when she walks. She had difficulty tandem walking even two steps without stumbling. She could go upon her tiptoes briefly, could go back on her heels briefly, could bear weight on each leg independently. Romberg was negative. Shoulders have forward extension to 135 degrees on the right, 90 degrees on the left. Abduction to 170 degrees on the right and 120 degrees on the left. Full internal rotation and external rotation 20 degrees bilaterally. Elbows, wrists, and hands have full range of motion.

She does have some mild degenerative changes to her finger joints. Right hip, she flexes to 100 degrees. Left hip, she only flexes to 80 degrees, complains of severe pain in her back on flexion of the left hip. She has full internal and external rotation of the hips. Knees and ankles have full range of motion. There is no joint effusion. No calf tenderness. No swelling or pitting edema.

Thoracolumbar Exam: She has flexion to only 80 degrees, extension to only 10 degrees, and lateral deviation left side 20 degrees and to right side 15 degrees. She does complain of severe pain in her back on motion. Straight leg raise was negative bilaterally.

> Neurological Exam: Cranial nerves II through XII seemed to be intact grossly. Motor strength was 5/5 in the right arm and legs. It was 4/5 at her left grip. Sensation to touch was intact. She did not complain of any numbness anywhere. Cerebellar functioning was good. No tremor demonstrated. Deep tendon reflexes were 2+ and equal bilaterally.

(AR 474–75.)

Dr. Wilson stated that Miller had "some old records" including an MRI dated February 24, 2020, which showed that Miller had "mild degenerative changes in the lower lumbar spine[,]" a "[l]eft foraminal disc protrusion at L3–L4 likely contacting the exiting left L3 nerve root[,]" and "[m]ild left neuroforaminal narrowing at L3–L4, L4–L5." (AR 475.) Records from a "[v]isit with the Middle Tennessee Bone and Joint clinic dated [June 16, 2020,]" assessed "spinal enthesopathy of the lumbar region[,]" among other conditions. (*Id.*) Dr. Wilson diagnosed Miller with "[c]hronic low back pain with probable radiculopathy." (*Id.*) Dr. Wilson opined that Miller "would have difficulty sitting two to four [hours] in an eight-hour of a [*sic*] day. Standing and walking probably less than 2 hours each. At this point, [Miller] can only lift 5 lbs. or less." (*Id.*) Dr. Wilson concluded his assessment stating that Miller "is able to take care of her own activities of daily living[,] but does seem to have significant back pain which has not been treated well." (AR 476.)

The ALJ summarized Dr. Wilson's findings in the decision as follows:

> In March 2021, Dr. Woodrow Wilson performed a physical consultative examination on the claimant. The latter was given a back brace, which she stated did not help at all. Physical therapy for a couple of months did not help either. She received injections in her back. She was taking over-the-counter medications, which did not really help. She developed numbness in her left leg at times. She was followed at the Fast Pace Clinic. Her surgical history included hand surgery in both hands in 2017. She had not worked since her injury at work in January 2020. Her gait was short-stepped, and she was limping complaining of back pain. She was able to go on tiptoes and back on her heels briefly. She was able to bear weight on each leg independently. Her motor strength was 5/5 in the right arm and legs and 4/5 in her left grip. Sensation to light touch was intact. She did not complain of any numbness anywhere. Deep tendon reflexes were 2+ and equal bilaterally. She had full range of motion but complained of severe back pain during left hip flexion. Dr. Wilson diagnosed the claimant with chronic low back pain with probable radiculopathy. Dr. Wilson found that the claimant would have difficulty sitting 2 to

> 4 hours in an 8-hour workday. Standing and walking probably less than 2 hours
> each. At this point, she was only able to lift 5 pounds or less. She was able to take
> care of her own ADLs, but seemed to have significant back pain, which had not
> been treated well (Ex. 5F).

(AR 24.) The ALJ analyzed Dr. Wilson's opinion as follows:

> The undersigned does not find the opinion of the examiner [Dr. Wilson] at
> Exhibit 5F persuasive because his diagnosis and his stated limitations are not only
> vague but appear to be based on the claimant's subjective complaints. Dr. Wilson
> diagnosed the claimant with chronic pain, which is a symptom and pain is
> subjective. Then, he added "with probable radiculopathy," which denotes that
> Dr. Wilson was not sure. In addition, his limitations are vague. He again used words
> such as "probably and would have." Finally, his findings are inconsistent with the
> totality of the objective medical record.

(AR 24–25.)

Miller argues that the ALJ's assertion that chronic lower back pain is a symptom and not a diagnosis "stems from the ALJ's own lay misinterpretation of medical terminology." (Doc. No. 14-1, PageID# 656.) Miller explains that lower back pain is a "widely accepted medical diagnosis" denoted by the diagnostic code "M54.5" in the International Classification of Diseases system ICD-10-CM. (*Id.*) Further, Miller argues that the ALJ's "cursory and conclusory analysis" does not satisfy the ALJ's obligations to articulate the bases for her conclusions under 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) because it does not provide a clear explanation of how the medical evidence was considered in relation to the supportability and consistency factors and therefore fails to "draw the required narrative bridge" between analysis and conclusion. (*Id.* at PageID# 662.) Miller also identifies specific medical findings in the administrative record that she argues support Dr. Wilson's medical opinion: the February 24, 2020 MRI showing that Miller had "mild degenerative changes in the lower lumbar spine[,]" a "[l]eft foraminal disc protrusion at L3–L4 likely contacting the exiting left L3 nerve root[,]" and "[m]ild left neuroforaminal narrowing at L3–L4, L4–L5." (AR 438); notes from physical therapists finding that Miller "was unable to perform standing hip extension[,]" had "[d]ifficulty bending/lifting, . . laying flat, . . . walking,

. . . standing and sitting, rising from chair" (AR 564); and physical therapist notes finding that Miller had "[a]mbulation deficits, [p]ain limiting function" as well as a "decreased trunk movement [and] [was] guarded with any trunk motion" during a session (AR 512, 538). Miller also identifies other record evidence that supports Dr. Wilson's limitation assessment, including orders from worker's compensation visits at the Fast Pace urgent care clinic that restricted Miller from lifting, pulling, or pushing more than 5 pounds (AR 357, 361) and a functional capacity evaluation that determined that Miller was "able to work at the SEDENTARY Physical Demand Level" (AR 409). Finally, Miller argues that the ALJ's failure to follow SSA procedural rules and regulations is not harmless error because the Court cannot engage in "'meaningful review'" of the ALJ's decision. (*Id.* at PageID# 654 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (citation omitted).)

The Commissioner responds that the ALJ properly considered Dr. Wilson's medical opinion and prior administrative medical findings by applying the factors of supportability and consistency but found other medical opinions in the administrative record more persuasive. (Doc. No. 17.) The Commissioner argues that Dr. Wilson's opinion used "non-definitive language" regarding Miller's limitations that is vague and does not necessarily mean that Miller is precluded from a particular function. (*Id.* at PageID# 681.) The Commissioner points to the fact that, in August 2020, Dr. Seung Park and Dr. Ok Yung Chung reviewed Miller's medical records, and determined that Miller could lift and/or carry 20 pounds occasionally and 10 pounds frequently (AR 98–99); that Miller could stand, walk, or sit for 6 hours; and that Miller could climb, balance, stoop, kneel, crouch, and crawl occasionally. (AR 73, 98–99.) The Commissioner also notes that the SSA regulations "clearly distinguish[ ] between impairments and symptoms and lists pain as a symptom, not an impairment" and concludes that the ALJ properly found that Dr. Wilson

diagnosed a subjective symptom and not an impairment. (*Id.* at PageID# 678 (citing 20 C.F.R. §§ 404.1529, 416.929, 404.1569a(a), 416.969a(a).) The Commissioner argues that, because pain is a subjective symptom, Dr. Wilson's proposed limitations were not based on objective evidence and were inconsistent with Miller's past work releases. (Doc. No. 17.) The Commissioner did not address Miller's argument regarding harmless error.

In her reply, Miller argues that the Commissioner's explanations of the ALJ's opinion made in the response brief were not articulated by the ALJ in her decision and therefore "constitute nothing more than impermissible *post-hoc* rationalizations" that do not remedy the ALJ's failure to comply with SSA regulations. (Doc. No. 19, PageID# 690.)

While the applicable SSA "regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources[,] . . . 'they still require that the ALJ provide a coherent explanation of [her] reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (third alteration in original) (quoting *Lester v. Saul*, Case No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). The SSA has explained that the new regulations set forth the "minimum level of articulation" ALJs must "provide in [their] determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416), *technical errors corrected by* 82 Fed. Reg. 15132-01 (Mar. 27, 2017); *see also Hardy*, 554 F. Supp. 3d at 906 (same). "An 'ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence.'" *Hardy*, 554 F. Supp. 3d at 906 (alterations

in original) (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)). It also "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Id.* at 908 (citing *Blakley*, 581 F.3d at 410).

The ALJ's analysis of Dr. Wilson's medical opinion does not satisfy the regulatory standard.

First, the ALJ stated that Dr. Wilson's "findings are inconsistent with the totality of the objective medical record." (AR 25.) But the ALJ did not articulate what particular examination findings she considered to be inconsistent with Dr. Wilson's diagnosis and assessment of Miller's limitations or whether or how she considered examination findings that did support Dr. Wilson's assessment. For example, Dr. Wilson found that Miller's cervical spine extension was "20 degrees" with "lateral deviation on the right side [to] 40 degrees and to the left side 30 degrees"; that Miller "complain[ed] of pain in her neck on motion"; that her thoracolumbar spine "ha[d] flexion to only 80 degrees, extension to only 10 degrees, and lateral deviation [to] left side [of] 20 degrees and to right side 15 degrees"; and she "complain[ed] of severe pain in her back on motion."[4] (AR 474, 475.) Dr. Wilson also found that Miller "complain[ed] of severe pain in her back on flexion of her left hip" and "only flexes [the left hip] to 80 degrees[.]" (AR 475.) The ALJ's summary of Dr. Wilson's examination omitted his specific findings regarding Miller's thoracolumbar spine flexion, extension, and lateral deviation; back pain; and cervical spine lateral deviation. (AR 474, 475.) The ALJ also did not articulate how she considered any of these findings in determining that Dr. Wilson's opined limitations were "inconsistent with the totality of the

---

[4] For context, it is "common" to have fifty-five degrees of cervical spine extension, ninety degrees of thoracolumbar spine flexion, and thirty degrees of thoracolumbar spine extension. 1 Dan J. Tennenhouse, *Attorneys Medical Deskbook* § 12:3 (4th ed. supp. Oct. 2023).

objective medical record." (AR 25.) The Southern District of Ohio addressed a similar issue in *Charlene R. v. Commissioner of Social Security*, Case No. 1:22-cv-473, 2023 WL 5214688, *6 (S.D. Ohio Aug. 15, 2023). There, the court rejected an ALJ's findings that two medical opinions "were inconsistent with 'the objective findings from [plaintiff's] treating sources'" because the ALJ "offer[ed] a generalized statement" regarding the consistency factor and "fail[ed] . . . to identify the objective finding or the specific treating source records (mental or physical) that provide[d] the point of comparison." *Id.* at *6, *10; *see also Brooks v. Comm'r of Soc. Sec.*, No. 2:22-CV-158, 2024 WL 966560, at *5 (E.D. Tenn. Mar. 6, 2024) (finding that the ALJ's explanation of the consistency factor "inadequate" where the ALJ found a psychologist's opinion "inconsistent with the record as a whole" "[w]ithout expla[ining] [ ] how [the opinion] was inconsistent or what parts were inconsistent . . ."). Likewise, the ALJ's generalized conclusions here do not satisfy the regulatory standard because they fail to identify and articulate what particular examination findings were inconsistent with Dr. Wilson's assessment. *Charlene R.*, 2023 WL 5214688, at *6; *Brooks*, 2024 WL 966560, at *5.

Second, as to the supportability factor, the ALJ found that Dr. Wilson's "diagnosis and stated limitations are not only vague but appear based on [Miller's] subjective complaints" and that Dr. Wilson appears "[un]sure" of his diagnosis because he concluded that Miller had "'probable radiculopathy[.]'" (AR 25.) But the ALJ failed to explain how Dr. Wilson's opinion was vague or unsubstantiated by "objective medical evidence and supporting explanations . . . ." *See Charlene R.*, 2023 WL 5214688, *6 (quoting 20 C.F.R. § 416.920c(c)(1)). Instead, the record shows that Dr. Wilson made multiple objective findings based on his physical examination about Miller's thoracolumbar spine flexion, extension, lateral deviation, and cervical spine lateral deviation; her severe pain in her back and neck on motion; and her gait, ability to stand up and

15

steadily walk. (AR 474–75.) Supported by these findings, Dr. Wilson's diagnosis of "probable radiculopathy" does not show uncertainty; it is best understood as a predictive finding.

Where, as here, "relevant evidence is not mentioned, the Court cannot discern whether the ALJ discounted or overlooked the evidence." *White v. Comm'r of Soc. Sec.*, Case No. 1:20-CV-00588, 2021 WL 858662, at *20 (N.D. Ohio. Mar. 8, 2021). "[E]ven though '[t]he ALJ is not required to address every piece of evidence or testimony presented, . . . [s]he must provide a "logical bridge" between the evidence and [her] conclusions.'" *Collier v. Comm'r of Soc. Sec. Admin.*, No. 3:16-cv-02077, 2018 WL 2193965, at *2 (M.D. Tenn. May 14, 2018) (first and second alterations in original) (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). The assessments made by Dr. Park and Dr. Chung took place more than six months before Dr. Wilson's examination and were based on a review of Miller's medical records (AR 24). In any event, the ALJ did "'not build an accurate and logical bridge'" to explain her conclusion that Dr. Wilson's opinion is inconsistent with other record evidence. Accordingly, the Court "cannot uphold" the ALJ's decision, even if there is sufficient evidence elsewhere in the record to support it. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio Mar. 1, 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Hardy*, 554 F. Supp. 3d at 906 (finding that an ALJ must "provide a coherent explanation of [her] reasoning . . . in order to "'provide sufficient rationale for a reviewing adjudicator or court'" (first alteration in original) (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021))).

The question thus becomes whether the ALJ's error was harmless. Miller argues that the ALJ's error was not harmless because, "if the ALJ had properly credited the limitations asserted by Dr. Wilson[,]" then the ALJ "would have found [Miller] 'disabled' based on the vocational expert's [Jane Colvin-Roberson] testimony." (Doc. No. 14-1, PageID# 662.) Miller states that

16
Case 1:22-cv-00045   Document 21   Filed 03/25/24   Page 16 of 20 PageID #: 708

Colvin-Roberson testified in response to hypotheticals posed by the ALJ that an individual limited to lifting no more than five pounds, sitting for two to four hours in an eight-hour workday, and standing and walking for two to four hours would be unable to perform Miller's past relevant work or other work in the national economy. (Doc. No. 14-1). Miller argues that the limitations in that hypothetical are consistent with the limitations that Dr. Wilson stated in his opinion. (*Id.*) While the Commissioner does not directly address Miller's harmless-error argument, the Commissioner argues that Colvin-Roberson testified that Miller could perform her past relevant work as a cleaner, a fast-food worker, and an assistant retail manager and that the ALJ properly concluded that Miller was not disabled. (Doc. No. 17.)

Courts in this circuit generally will excuse an ALJ's procedural error as harmless "unless it prejudices the claimant on the merits or deprives him of substantial rights." *Lorraine R. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:20-cv-00396, 2022 WL 4232839, at *4 (S.D. Ohio Sept. 14, 2022) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009)). But a court's ability to excuse an ALJ's procedural error depends "upon the nature of the regulation" with which the ALJ did not comply "and the importance of [the] procedural safeguard" the regulation establishes. *Id.* For example, in *Wilson v. Commissioner of Social Security*, the Sixth Circuit held that an ALJ's failure to comply with the treating physician rule—which 20 C.F.R. § 404.1520c and § 416.920c replaced—will rarely be excused because that rule "bestow[ed] a 'substantial right' on parties before the agency[.]" 378 F.3d 541, 547 (6th Cir. 2004). Under *Wilson*, an ALJ's failure to articulate good reasons for less than fully crediting a treating physician's medical opinion, as required by the treating physician rule, could

> only be excused as harmless if the medical opinion "[was] so patently deficient that the Commissioner could not possibly credit it," if the violation [was] irrelevant because the Commissioner "adopt[ed] the opinion . . . or ma[de] findings consistent with [it]," or if the goal of the procedural safeguard [was] otherwise met.

*Lorraine R.*, 2022 WL 4232839, at *4 (fourth and sixth alterations in original) (quoting *Wilson*, 378 F.3d at 547); *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547).

"The Sixth Circuit has yet to articulate a harmless error test under the revised" regulations governing ALJs' consideration of medical opinions. *Musolff v. Comm'r of Soc. Sec.*, Case No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022), *report and recommendation adopted*, 2022 WL 1568478 (N.D. Ohio May 17, 2022); *see also Lorraine R.*, 2022 WL 4232839, at *4. However, several district courts in this circuit have found that the *Wilson* harmless error test applies to an ALJ's failure to explain their consideration of the supportability and consistency factors under the revised regulations. *See Musolff*, 2022 WL 1571864 at *13 (collecting cases); *Lorraine R.*, 2022 WL 4232839, at *4 (citing *id.*); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) (quoting *Wilson*, 378 F.3d at 547); *Greggs v. Kijakazi*, No. 1:22-cv-0041, 2023 WL 3746478, at *9 (M.D. Tenn. May 31, 2023) (first citing *Lorraine R.*, 2022 WL 4232839, at *4–5; and then citing *Musolff*, 2022 WL 1571864, at *13), *report and recommendation adopted*, 2023 WL 4317265 (M.D. Tenn. July 3, 2023).

This Court agrees and concludes that the *Wilson* harmless error test applies to an ALJ's failure to comply with 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2). Thus, an ALJ's failure to articulate consideration of the supportability and consistency factors in analyzing a medical opinion "may be harmless when: (1) the opinion is so patently deficient that it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite failing to strictly comply with the regulations." *Musolff*, 2022 WL 1571864, at *13 (citing *Friend*, 375 F. App'x at 551).

The Commissioner has not argued that any errors the ALJ made in evaluating Dr. Wilson's opinion were harmless, and the Court finds that they were not. First, there is no indication that Dr. Wilson's opinion was patently deficient. To the contrary, Dr. Wilson's opinion appears to be thorough, as it incorporates, among other findings, the results of the MRI and the physical therapy notes from Miller's physical therapy sessions. (AR 475.) Based on his own physical examination of Miller, Dr. Wilson concluded that Miller "would have difficulty sitting two to four [hours]in an eight-hour . . . day [and] [s]tanding and walking probably less than 2 hours each." (AR 475.) Dr. Wilson opined that, "[a]t this point, [Miller] can only lift 5 lbs. or less" (*id.*) and that Miller's "significant back pain [ ] has not been treated well" (AR 476). Second, the ALJ did not make findings consistent with Dr. Wilson's opinion. For example, contrary to Dr. Wilson's stated limitations, the ALJ's RFC states that Miller could "perform less than full range of light work . . . with lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk sit 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday." (AR 20.) The ALJ also found that Miller's RFC included "[o]ccasional climbing, balancing, stooping, kneeling, crouching, and crawling [but must] avoid concentrated exposure to unprotected heights and moving machinery." (*Id.*) The ALJ posed a hypothetical to Colvin-Roberson of an individual limited to lifting no more than five pounds, sitting for two to four hours in an eight-hour workday, and standing and walking for two to four hours, and Colvin-Roberson responded that such individual would not be able to perform Miller's past relevant work or other work in the national economy. (AR 63.) Finally, the ALJ's overall analysis does not meet the goals of the SSA regulations because it leaves this Court without a "clear understanding" of why Dr. Wilson's opinion and stated limitations were not adopted. *Musolff*, 2022 WL 1571864, at *13. The ALJ's cursory finding that Dr. Wilsons' stated limitations were "vague" (AR 25) is insufficient to explain why Dr. Wilson's opinion and stated limitations

were not adopted. *See* SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While the Commissioner provided an explanation in the response brief to make the logical bridge between analysis and conclusion, the ALJ did not provide a similar statement of her reasoning in her decision.

Because the ALJ has not sufficiently articulated her reasoning and because Miller is entitled to this procedural protection, the ALJ's failure to address Dr. Wilson's opinion was not harmless. The Court therefore concludes that remand is required.

## IV. Conclusion

For these reasons, Miller's motion for judgment on the record (Doc. No. 14) is GRANTED, the Commissioner's decision is VACATED, and this matter is REMANDED to the SSA for further administrative proceedings consistent with this Memorandum Order.

This Order constitutes a final judgment under Federal Rule of Civil Procedure 58. The Clerk's Office is DIRECTED to close the case file.

Entered this 25th day of March, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge